Gary BURRIS, Plaintiff,

v.

Officer Jay KIRKPATRICK, Defendant.

No. S 83–190.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 11, 1986.

Gary Burris, pro se.

William Patrick Glynn, III, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

On November 24, 1982 at approximately 8:30 o'clock P.M. the plaintiff, Gary Burris, was an inmate at the Indiana State Prison, housed in a two-man cell on death row there. His cellmate was Michael Daniels. Both are awaiting execution. The defendant, Jay Kirkpatrick, was correctional officer on duty in that death row unit on that particular evening. At the time in question, Burris had on his earphones and was writing. An argument erupted between Officer Kirkpatrick and Daniels over the delivery of some milk by the former to the latter. Burris was in no way involved in the argument. There is no competent evidence to suggest or infer any misconduct at this time and place by Burris.

The cell in question is eleven (11) feet wide and nine (9) feet long or deep. It contains two sleeping bunks, a cabinet, a table, a toilet, and a sink. Two inmates and their personal belongings create a very crowded area with very limited locomotion for the occupants. At no time during this entire incident were the doors to this particular cell unlocked. In other words, at all times, both Daniels and Burris were securely locked in their cells.

As the Daniels-Kirkpatrick argument ensued it became heated in a very literal sense. There is some indication that Daniels may have gone beyond verbal abuse of Kirkpatrick. In any event, Kirkpatrick threw two containers of hot water into this particular cell striking both of its occupants and causing burns to Burris. The hot water was taken from a nearby faucet and was placed in two containers, a five gallon bucket and a one gallon mustard container. Kirkpatrick threw both containers into the cell, striking both Burris and Daniels. Burris sustained burns to his body but there is no permanent residual effect.

After the incident, Kirkpatrick took the unit key home with him until he returned to work there the next day. Sometime later, after a hearing, he was placed on three days suspension but that penalty was suspended and he was placed on six months probation. Kirkpatrick remained in the employment of the Indiana Department of Correction as a correctional officer at the Indiana State Prison until he resigned on August 25, 1984, and now lives outside the State of Indiana.

The complaint in this case was filed *pro se* by the plaintiff on May 9, 1983 alleging a claim under 42 U.S.C. § 1983 and invoking this court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3), (4). A bench trial was held at the Indiana State Prison on November 12, 1986 and under the order of the Judicial Council of the Seventh Federal Circuit dated October 4, 1984, supplemental briefs have been filed and this case is now ripe for decision. This memorandum and order will constitute the findings and conclusions as required under Rule 52 of the Federal Rules of Civil Procedure.

In addition to filing a complaint against Officer Jay Kirkpatrick, the plaintiff also sued Jack Duckworth, Edward Cohn and Robert Bronnenberg. The defendants, Duckworth, Cohn and Bronnenberg, have been previously dismissed in this case on the basis that no claim under § 1983 can be based on the concept of respondeat superior as defined in *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), as most recently summarized in *Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986). Those rulings are here and now reconfirmed.

### II.

Amendment VIII of the Constitution of the United States states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

This amendment has long since been "incorporated" into Amendment XIV and therefore is binding upon the States through the due process clause thereof. *See State of Louisiana, v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947).

Judge Friendly breathed relevant life into Amendment VIII thirteen (13) years ago in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), when he said:

> The management by a few guards of a large number of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional right. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick* has since been cited with approval by the Supreme Court of the United States. The first such citation that this court has been able to locate is *Ingraham v. Wright,* 430 U.S. 651, 669, 97 S.Ct. 1401, 1411, 51 L.Ed.2d 711 (1977) and the most recent citation was January 21, 1986 in *Davidson v. Cannon,* —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

*Johnson v. Glick* was also cited with approval the first time by the Court of Appeals for the Seventh Circuit in *Potter v. Clark,* 497 F.2d 1206 (7th Cir.1974) and was first cited with approval by this court in *Lock v. Jenkins,* 464 F.Supp. 541 (N.D. Ind.1978).

Thus, on November 24, 1982, the *Johnson v. Glick* reading of Amendment VIII was clearly established here and elsewhere.

On January 21, 1986, the Supreme Court of the United States decided *Davidson v. Cannon,* —— U.S. ——, 106 S.Ct. 668 and *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662.

The Supreme Court has recently espoused a measure of conduct in two cases which must be shown before a constitutional infringement protected by 42 U.S.C. § 1983 is implicated. Second, and more importantly, the Court emphasized that only those rights directly derived from the Constitution, its Bill of Rights, and Amendment will be protected by 42 U.S.C. § 1983.

In *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court reviewed the § 1983 complaint of an inmate who argued that his liberty interest of freedom from bodily injury "without due process of law" within the meaning of the Fourteenth Amendment had been abridged when the jail staff left a pillow case on the jail floor which the plaintiff slipped on resulting in physical injury. At 106 S.Ct. 664, the Court cited its prior holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), wherein it held that all that need be shown in a § 1983 suit is that a constitutional deprivation occurred and that there is no requirement of a showing of the defendant's "state of mind". The Court concluded that the unintentional loss of a liberty, a right, property, or personal injury resulting from negligent action does not rise to a level which is protected by the Fourteenth Amendment:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries old principle of due process of law.

106 S.Ct. at 665.

The Court, at 106 S.Ct. 666, made it clear that only those rights which are traditionally derived from an uncluttered and pristine reading of the Constitution, its Bill of Rights and Amendments will trigger Fourteenth Amendment protection:

> Our Constitution deals with the large concerns of the governors and the gov-

erned, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), quoted in *Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1917.

The Court in *Daniels* concluded that the actions of the defendants of leaving a towel on a floor did not rise to the level of conduct which implicates the Due Process Clause of the Fourteenth Amendment.

> Where a government official's act causing injury to life, liberty or property is merely negligent "no procedure for compensation is constitutionally required." *Parratt*, 451 U.S. at 548 [101 S.Ct. at 1919] (POWELL, J., concurring in result (footnote omitted).

106 S.Ct. at 666.

The Court emphasized its narrow interpretation of those subject matters which legitimately can claim ancestry in the Constitution:

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interests. The enactment of tort claim statutes, for example, reflect the view that injuries caused by such negligence should generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. (footnotes omitted).

106 S.Ct. at 666.

In *Davidson v. Cannon*, — U.S. —, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), another prison case, the plaintiff, an inmate, filed a § 1983 action against prison administrators alleging that they had abridged his right not to be subjected to cruel and unusual punishment as proscribed by the Eighth Amendment, and his right not to be deprived of personal security without due process of law as protected by the Fourteenth Amendment. Factually, the plaintiff asserted that he had sent a written message to a prison administrator informing the administrator that he had been physically threatened by a fellow inmate and that he feared assault from the inmate whose name was specified. Prison administrators basically ignored the message. The plaintiff was soon thereafter assaulted by the specified inmate by use of a fork, resulting in wounds to plaintiff's face, neck, head and body, and a broken nose. While citing its decision in *Daniels, supra,* the Court again held that the defendants' inattention to the written message did not rise beyond a level of conduct which could be described as negligent. The Court held that even though serious injury resulted from defendants' conduct, the plaintiff was not protected by the Due Process Clause of the Fourteenth Amendment. *Davidson,* 106 S.Ct. at 670.

The plaintiff in *Davidson* attempted to distinguish and isolate the substantive claim (not to be deprived of personal security) from the procedural claim by arguing that his claim was "purely procedural," thus circumventing the requirement that plaintiff must show conduct beyond negligence. The Court reaffirmed that such an argument must fail because the procedural aspect of the Fourteenth Amendment is only triggered if any underlying substantive right is at issue:

> In an effort to limit the potentially broad sweep of his claim, petitioner emphasizes that he "does not ask this Court to read the Constitution of an absolute guarantor of his liberty from assault by a fellow prisoner, even if that assault is caused by the negligence of his jailers." Brief for Petitioner 17. Describing his claim as one of "procedural due process, pure and simple," *Id.*, at 14, all he asks is that New Jersey provide him a remedy. But the Fourteenth Amendment does not re-

quire a remedy when there has been no "deprivation" of a protected interest. *Davidson,* 106 S.Ct. at 670. The Court in *Davidson* concluded that the complaint failed because "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson,* 106 S.Ct. at 671.

Most recently, at least one judge of our Court of Appeals has summarized: "Negligence is not itself actionable. *Daniels v. Williams,* [—— U.S. ——] 106 S.Ct. 662 [88 L.Ed.2d 662] (1986)." *Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir.1986). *See also Bodine v. Elkhart County Election Board,* 788 F.2d 1270, 1272 (7th Cir.1986).

Given the careful and restrained analysis of Judge Friendly in *Johnson v. Glick* and considering the same in the context of *Davidson* and *Daniels,* it is this court's conclusion that the conduct of Officer Kirkpatrick in this case goes well beyond the concepts of negligence as described in the *Davidson-Daniels* cases.

This court is well aware of the constitutional inhibitions that exist when inmates are locked in a cell. In *Lock v. Jenkins,* an appeal from this judge and court, see 464 F.Supp. 541, Judge Fairchild, speaking for the Court of Appeals in 641 F.2d 488, 496 stated:

> The October 11, 1975 tear gassing of Carpenter and Lock was found to be needed under the circumstances then existing "to maintain and restore discipline and order," 464 F.Supp. at 555, and to be in a not unreasonable amount. Although the record demonstrates conflicting testimony about the amount of gas used, the appellant did not challenge that finding as clearly erroneous and we accept it as true. Testimony indicated that the safekeepers were engaged in inciting to riot at a time of tremendous tension in the prison following an attempted escape and the taking hostage of the prison warden and several others. We believe that the facts shown regarding this incident constitute one of the rare occasions when use of tear gas against persons locked in cells was not justified.

> On the contrary, we find that the use of gas on June 25 to retrieve a metal food tray from safekeeper Carpenter was constitutionally impermissible. Although defense witnesses testified, and the court agreed, that the tray constituted a potential weapon, nothing in the record demonstrates how the tray could be used as a weapon as long as Carpenter was locked in his cell. Although we recognize that significant destruction of prison property by a person locked in a cell might justify the use of tear gas, we do not believe that the possible damage to the tray rises to that level.

> Similarly impermissible was the use of gas on April 21 to stop safekeepers Hunt and Brown from shouting and uttering threats.

Recognizing as Judge Fairchild did in footnote 8 at page 491 thereof that some differences exist conceptually between pretrial detainees and convicted prisoners, in the case of pretrial detainees the rationalization must be under the Due Process Clause of the Fourteenth Amendment whereas with convicted prisoners that rationalization may be under the Eighth Amendment. In either event, basically the same values are considered and the same kinds of factual situations are presented to the courts for decision.

The above quotation from *Lock v. Jenkins* very clearly indicates the constitutional inhibitions that the Eighth Amendment places on correctional officers in dealing with prisoners who are locked in their cells. It is not accidental that both Judge Fairchild and this court have set out virtually the same quotation from Judge Friendly.

It is not here necessary to determine whether or not the interchange between Daniels and Kirkpatrick justified the latter throwing hot water on the former. This court leans very heavily in the direction that it did not, especially considering the above quoted statement from *Lock v. Jenkins.* What this court must decide, given all of the circumstances whether or not the

conduct of throwing approximately six gallons of hot water into a small 9 × 11 cell occupied by two death row inmates was a manifestation of deliberate indifference as that standard was established by Justice Marshall in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In this context this court also assumes that claim for a violation of the Eighth Amendment based solely on negligence would fall under the weight of the *Davidson* and *Daniels* decisions and would also be outside of the scope of any claim under § 1983.

In *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1093 n 10, District Judge Sarah Evans Barker gave the following instruction:

> Mere negligence or inadvertence on the part of the county officials is not sufficient to sustain a violation of the Eighth Amendment. County officials must act in callous indifference to the dangers faced by a prisoner or intentionally inflict cruel and unusual punishment before they will incur liability for an Eighth Amendment violation.
>
> In order to show callous indifference, plaintiffs must prove the existence of a "pervasive risk of harm" from other inmates, and that jail officials failed to reasonably respond, knowing of that risk. A pervasive risk of harm may be established by proving that violence or sexual assaults occur with sufficient frequency that inmates are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures. Once a pervasive risk has been established, it must be determined whether the jail officials reasonably responded to that risk.

That instruction was explicitly approved by Judge Wood, speaking for the Court of Appeals in that case and after considering the array of authority concluded:

> The cases have required the plaintiffs to prove deliberate or callous indifference, evidenced by an actual intent to violate

the inmate's rights or reckless disregard for the inmate's rights, in order to prevail on an Eighth Amendment claim. Citing *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985); *Watts v. Laurent,* 774 F.2d 168, 172 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); and *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985).

■ To decide the question of deliberate indifference of Kirkpatrick, the focus is on his total relevant conduct. Given these circumstances and especially given the fact that the plaintiff in this case was not a direct participant in the interchange between Kirkpatrick and Daniels, his conduct was certainly recklessly indifferent to the rights of Burris as were defined at least 13 years ago by Judge Friendly in *Johnson v. Glick.* It is possible to hold that the mere act of throwing hot water into a small cell occupied by two inmates violates the Eighth Amendment values and that the Court of Appeals' decision in *Lock v. Jenkins* supports that result. Certainly the act of throwing hot water into this cell that might cause burns and the attendant pain and injury to another occupant goes well beyond simple negligence and establishes a deliberate indifference as defined in *Estelle v. Gamble.*

This court had a chance to see and hear the plaintiff testify under oath and finds his version of the events here involved basically credible. A considerable amount of the documentary evidence submitted by the defendant is consistent with the plaintiff's versions of these events. It should also be here emphasized that the court is not following any inference against this defendant for his failure to be present at the trial and testify. This court accepts the defendant's proffered explanation for his absence.

The violation of rights under the Eighth Amendment involved here are substantial rather than just procedural and certainly this court was made aware of that distinction by Justice Stewart in *Owen v. Lash,* 682 F.2d 648 (7th Cir.1982). *See also Red-*

**746**

*ding v. Fairman,* 717 F.2d 1105 (7th Cir. 1983).

■ Where substantive constitutional rights are violated, damages can be presumed even in the absence of discernible consequential damages. See *Lenard v. Argento,* 699 F.2d 874, 889 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Owen v. Lash,* 682 F.2d 648, 658–59 (7th Cir.1982).

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court of the United States reversed a decision of the Court of Appeals for the Seventh Circuit, which had held that students were entitled to recover substantial non-punitive damages without a showing of consequential injury when they were denied procedural due process. Since the rights involved here are substantive rather than procedural, this court is not constrained by that holding in *Carey v. Piphus.* This court is also familiar with *Kincaid v. Rusk,* 670 F.2d 737, 745–46 (7th Cir.1982), in which the plaintiff sought damages against the Sheriff of Tippecanoe County, Indiana, for violation of both due process and First Amendment rights in denying him reading material. The Court of Appeals for the Seventh Circuit held that the plaintiff has failed to prove compensible damages, but was entitled to nominal damages.

An examination of the foregoing authorities convinces this court that even in the absence of permanent injuries, this plaintiff is entitled to damages for the mere act of violating substantial constitutional rights which did cause him specific personal pain and suffering. This court has determined that the reasonable amount of such damages should be in the sum of $100.00.

Therefore, judgment shall enter for the plaintiff, Gary Burris, in the sum of $100.00 against the defendant, Officer Jay Kirkpatrick, and costs are assessed in favor of the plaintiff against the defendant. IT IS SO ORDERED.