Steven **HILL**, Plaintiff–Appellee,

v.

William **SHELANDER**, Defendant–Appellant.

No. 92–2058.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 1992.

Decided April 30, 1993.

Marcia F. Straub (argued), Peoria, IL, for plaintiff-appellee.

John E. Cassidy (argued), Cassidy & Mueller, Peoria, IL and Stewart J. Umholtz, Office of the State's Atty. of Tazewell County, Pekin, IL, for defendant-appellant.

Before POSNER, FLAUM and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Steven Hill brought this action under 42 U.S.C. § 1983 against Sergeant William Shelander of the Tazewell County Sheriff's Department to recover damages for injuries he sustained while incarcerated at the Tazewell County Jail (the "jail"). Hill alleged that Shelander beat him without provocation and thereby deprived him of his eighth amendment right to be free from cruel and unusual punishment. Hill sued Shelander in his individual capacity,[1] and Shelander sought shelter under the qualified immunity doctrine. The district court denied Shelander's motion for summary judgment, and he appeals. We affirm in part and dismiss in part.

## I. FACTS

We describe the facts in the light most favorable to Hill, drawing all reasonable inferences in his favor. Hill had been convicted of burglary and was being held at the jail while awaiting imposition of his sentence. On December 14, 1983, Paul Schmidt, a jailer, attempted to place Kim Black, a new inmate, into a cell occupied by Hill and others. The inmates objected to sharing their cellblock with Black because they believed he was gay. When Schmidt ordered the inmates to clear their personal belongings from an unoccupied bunk to make room for Black, they refused to do so. Schmidt then decided to move Hill and another inmate, Tim Carpenter, to a disciplinary cell, and he sought Shelander's assistance in moving the two. Schmidt told Shelander that Hill and Carpenter objected to Black's placement in the cellblock, and another jailer told Shelander that the inmates had threatened Black. Shelander went to the cellblock and ordered Hill and Carpenter to step out of the cell. Hill came to the doorway and stopped, questioning why he should have to leave the cell. Shelander responded by grabbing Hill's hair and shoulder, pulling him out of the cell, and slamming his head and back against the metal bars of the cellblock directly across the hall. While Hill was still dazed from this collision, Shelander struck him twice in the face with his fist and kicked him in the groin, until Hill finally grabbed Shelander's wrist to prevent further blows. Hill sustained injuries to his head, face, and back and still suffers headaches as a result of the beating.

The district court rejected Shelander's invocation of qualified immunity, concluding that clearly established authority prohibited the type of excessive force Shelander allegedly used against Hill and that a reasonable prison official would or should have known that such a beating violated Hill's eighth amendment rights. The district court therefore held that Shelander was not immune from suit.

## II. ANALYSIS

■ A denial of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the mean-

---

1. Hill originally sued Shelander in his official capacity, but his appointed counsel amended the complaint to state only an individual capacity claim. The district court dismissed that claim as time-barred, but we reversed on the basis of Fed.R.Civ.P. 15(c), holding that the amended complaint related back to the filing date of the original complaint. *See Hill v. Shelander*, 924 F.2d 1370 (7th Cir.1991).

ing of 28 U.S.C. § 1291. *Mitchell v. Forsyth,* 472 U.S. 511, 526–30, 105 S.Ct. 2806, 2815–18, 86 L.Ed.2d 411 (1985); *see also Gorman v. Robinson,* 977 F.2d 350, 354 (7th Cir.1992). Our jurisdiction is necessarily limited, however, to those cases where we may decide the immunity question as a matter of law. *Gorman,* 977 F.2d at 354. As we explained in *Gorman,* "[i]f we cannot resolve an issue without deciding a question of fact, then we lack jurisdiction over the appeal of that question." *Id.; see also McDonnell v. Cournia,* 990 F.2d 963, 964 (7th Cir.1993); *Marshall v. Allen,* 984 F.2d 787, 792 (7th Cir.1993); *Elliott v. Thomas,* 937 F.2d 338, 341–42 (7th Cir.1991), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 973, 1242, 117 L.Ed.2d 138 (1992).[2] We must therefore consider whether there are factual issues relating to Shelander's claim of qualified immunity. *See Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir.1992). If factual issues exist, and the record supports a version of the facts under which Shelander would not be entitled to immunity, Hill must prevail, for in that circumstance, we would be unable to decide the immunity question as a matter of law. *See Hansen v. Bennett,* 948 F.2d 397, 399 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992); *see also Marshall,* 984 F.2d at 793; *Hall,* 957 F.2d at 404. In conducting this inquiry, we view the facts and the evidence in the light most favorable to Hill, the nonmoving party. *McDonnell,* 990 F.2d at 963, 964; *Marshall,* 984 F.2d at 793.

*A. Qualified Immunity After Harlow.*

■ In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Prior to *Harlow,* the qualified immunity inquiry included both an objective and a subjective component. *See, e.g., Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975); *see also Rakovich v. Wade,* 850 F.2d 1180, 1205 (7th Cir.) (en banc) (discussing development of qualified immunity from *Pierson* to *Harlow* ), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). The objective prong considered whether the government official knew or reasonably should have known that his actions would violate the constitutional rights of another, whereas the subjective component looked to the official's state of mind—that is, whether he acted with malicious intent to cause a constitutional deprivation. *See Rakovich,* 850 F.2d at 1205. If a plaintiff could raise a question as to either inquiry, the defendant was not immune from suit. *Id.*

*Harlow* eliminated the subjective component of the qualified immunity analysis because the Court found that an examination of the defendant's subjective intent was incompatible with the goal of resolving insubstantial claims against government officials short of trial. *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737. Thus, *Harlow* shifted the focus of the qualified immunity analysis to the objective component alone in order "to shield public officials not only from liability, but also from the burdens of trial." *Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987); *see also Marshall,* 984 F.2d at 792. Because the objective analysis is necessarily less fact-dependent than the subjective inquiry, summary judgment has become the appropriate stage for resolving most qualified immunity issues. *See O'Connor v. Chicago Transit*

---

**2.** As we explained in *Hansen v. Bennett,* 948 F.2d 397, 399 n. 3 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992), this jurisdictional rule

presents a curious situation. If a district court denies summary judgment because it finds a factual dispute, and the appellate court agrees, then the appellate court is forced to hold that it lacks jurisdiction. As a result, it is impossible

for an appellate court to affirm such a ruling. Though curious, this situation makes sense. Dismissing the appeal is equivalent to affirming the denial; either way, the case and the issue proceed to trial. The situation seems curious only because we do not often face it outside the context of immunities, as denials of summary judgment are not ordinarily appealable.

*Authority,* 985 F.2d 1362, 1366 (7th Cir. 1993); *Rakovich,* 850 F.2d at 1205.

*Harlow* has created a "conundrum," however, in cases where the alleged constitutional violation requires a showing of intent. *See Hansen,* 948 F.2d at 399 n. 4; *Elliott,* 937 F.2d at 344. Although *Harlow* eschews an inquiry into subjective intent, in some cases, proof of the defendant's mental state is an element of the constitutional violation. *See Hansen,* 948 F.2d at 399 n. 4; *Elliott,* 937 F.2d at 344; *Rakovich,* 850 F.2d at 1210. We have previously held that by eliminating the subjective component from the qualified immunity analysis, the Supreme Court did not intend to "limit civil rights actions to those where state of mind was *not* a part of the substantive law." *Rakovich,* 850 F.2d at 1210 (emphasis in original); *see also Hansen,* 948 F.2d at 399 n. 4; *Elliott,* 937 F.2d at 344. Rather, we have attempted to resolve the conundrum by developing a two-part qualified immunity inquiry: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " *Rakovich,* 850 F.2d at 1210 (quoting *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986)). The defendant's subjective intent may be relevant to the first question, but not to the second. *Id.*

▇ Thus, despite *Harlow's* focus on a purely objective inquiry, the plaintiff must be afforded an adequate opportunity to establish intent when it is an element of the alleged constitutional violation. *See Elliott,* 937 F.2d at 344. At the same time, to be consistent with *Harlow's* preference that qualified immunity be resolved on summary judgment, we have held that "an assertion of improper motivation must in addition be accompanied by some specific factual support." *Rakovich,* 850 F.2d at 1210; *see also Hansen,* 948 F.2d at 399 n. 4; *Elliott,* 937 F.2d at 344.

### B. Shelander's Intent.

▇ To determine whether a prison official used excessive force in violation of the eighth amendment, we must consider " 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' "

*Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *see also Hudson v. McMillian,* ─── U.S. ───, ───, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Because Hill has thus asserted a constitutional claim requiring proof of intent, he must adduce specific factual support for his allegation of bad intent to survive a motion for summary judgment. Shelander argues that Hill has failed to do that here because he relies solely on the amount of force used, which, Shelander asserts, is insufficient to establish the mental element of an eighth amendment violation. (*See* Shelander Br. at 17–18 (citing *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084).)

▇ Yet we find that Hill has produced evidence going beyond only the amount of force applied by Shelander. Hill presented evidence from which a finder of fact could infer that Shelander applied force with the intent to punish. In his deposition, Hill characterized the incident as an unprovoked assault occasioned solely by his asking why he was being moved. Moreover, Hill maintains that he did not fight back once Shelander threw him against the bars of the cell across the hall. If the fact-finder were to accept Hill's story, then Shelander arguably acted without justification because there would have been no need for Shelander to physically assault Hill in order to maintain or restore discipline in the cell. Thus, Hill's evidence could support a finding that Shelander acted maliciously in violation of the eighth amendment. Shelander, on the other hand, characterizes the encounter with Hill as a "struggle" that began after Hill swung his arms to break the sergeant's grip on his shoulder. He contends that the use of force was necessary to ensure order because the incident occurred in front of an open door to a cell holding other prisoners.

▇ We cannot choose between these differing accounts of the incident on a paper record. If a finder of fact were to accept Hill's version, it could infer that Shelander acted with malicious intent, meaning that Hill could establish an eighth amendment viola-

tion. Accepting Shelander's version, on the other hand, the fact-finder could find that Shelander simply was acting in good faith to restore order in the cellblock. In that instance, Shelander would not have violated Hill's clearly established constitutional rights, and he would be entitled to qualified immunity. Shelander's argument therefore raises a disputed issue of fact on the question of his intent. *See Hansen,* 948 F.2d at 400; *see also Marshall,* 984 F.2d at 792–93; *Elliott,* 937 F.2d at 342–43. Because we are unable to resolve the immunity question without resolving a disputed issue of fact, we lack jurisdiction over Shelander's appeal of this question. *See Hansen,* 948 F.2d at 399–400; *see also Marshall,* 984 F.2d at 792–93; *Gorman,* 977 F.2d at 354; *Elliott,* 937 F.2d at 343. We therefore dismiss this portion of Shelander's appeal for lack of jurisdiction.

## C. Clearly Established Constitutional Standards.

■ Shelander also argues that, even accepting Hill's version of the incident, the state of the law on the use of force by prison officials was ambiguous so that he did not violate Hill's "clearly established" constitutional rights. According to Shelander, the ambiguity arises because the force appropriate to any given circumstance depends on a balancing of institutional security concerns against possible harm to the inmate, meaning that no generalizable parameters exist. Because this argument suggests that Shelander acted "in the shadow of legal uncertainty," we have jurisdiction to review it. *See Marshall,* 984 F.2d at 793; *Elliott,* 937 F.2d at 342. However, we conclude that the eighth amendment right at issue here was clearly established when Shelander acted.

The right allegedly violated must be " 'clearly established in a particularized sense.' " *Juriss v. McGowan,* 957 F.2d 345, 350 (7th Cir.1992) (quoting *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 430 (7th Cir.1989), *cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990)); *see also Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct.

3034, 3038–39, 97 L.Ed.2d 523 (1987). In other words, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand his conduct to violate that right. *See Auriemma v. Rice,* 910 F.2d 1449, 1456 (7th Cir.1990) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Here, the appropriate question, considering the evidence in the light most favorable to plaintiff, is whether in December 1983, a reasonable prison official could have reasonably concluded that when an inmate refused to exit his cell, the Constitution permitted him to pull the inmate from his cell by the shoulder and hair, slam the inmate's head against the bars of an adjacent cell, and strike him twice in the face and knee him in the groin. *See Auriemma,* 910 F.2d at 1457.

The notion that " 'unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment' " is not a new or unusual constitutional principle. *See Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977)); *see also Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The test in eighth amendment excessive force cases has been well settled for a number of years: " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). As we explained above, if the finder of fact were to decide that Shelander acted with malicious intent, there could be no question that a reasonable prison sergeant should reasonably have known that the conduct described by Hill violated the eighth amendment. That conclusion is unaffected by the fact that a prison official must balance institutional security concerns against possible harm to the inmate in taking action.[3] Accordingly, viewing the facts in the light most favorable to

---

**3.** Shelander's argument that the balancing process itself prevents the law from being "clearly established" would result in a finding of immunity whenever a prisoner makes an excessive force claim against a prison official.

Hill, Shelander did not act in the shadow of legal uncertainty, and he is therefore not entitled to qualified immunity.

### III. CONCLUSION

The district court properly denied Shelander's motion for summary judgment on the issue of qualified immunity.

AFFIRMED IN PART, DISMISSED IN PART.