**Richard W. KAPFHAMMER, Plaintiff,**

v.

**S. BOYD, Defendant.**

**No. 96–C–1422.**

United States District Court, E.D. Wisconsin.

May 19, 1998.

Richard Kapfhammer, Hardeman County Correctional Facility, Whiteville, TN, for Plaintiff.

Stephen J. Nicks, Assistant Attorney General, Madison, WI, for Defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Mr. Kapfhammer, a state prisoner who is proceeding pro se, has sued Mr. Boyd, a correctional officer at the Waupun Correctional Institution ["WCI"], pursuant to 42 U.S.C. § 1983. The plaintiff alleges that Mr. Boyd violated his right under the Eighth Amendment to be free from cruel and unusual punishment when Mr. Boyd used excessive force during a "rapid deployment drill" at the prison. The defendant has moved for summary judgment; it is that motion that is presently before the court.

### Factual Background

The following undisputed facts are taken from the defendant's proposed findings of fact ["DPFF"] and the plaintiff's response to those proposed findings ["PR"]. At all relevant times Richard Kapfhammer was incarcerated at WCI and Steven Boyd was a correctional officer at WCI. (DPFF ¶¶ 2–3; PR ¶ 1.) Michael Dittman, a security officer at WCI, and the defendant were involved in a "rapid deployment drill" in the northwest cell hall of the prison on October 2, 1996. (DPFF ¶¶ 4, 7; PR ¶ 1.) Mr. Kapfhammer's

cell was one of the areas that was searched during the drill. (DPFF ¶ 7; PR ¶ 1.)

Correctional officers who conduct such searches are instructed to give the inmate a direct order to come out of his cell. (DPFF ¶ 8; PR ¶ 1.) If the inmate fails to "come out immediately," the officer is instructed to enter the cell and remove the inmate. (DPFF ¶ 8; PR ¶ 1.) The officers do this quickly so that the prisoners do not have time "to hide or dispose of any contraband items such as the drugs the search was looking for." (DPFF ¶ 8; PR ¶ 1.)

On October 2, 1996, at approximately 8:30 a.m., Mr. Boyd gave Mr. Kapfhammer a direct order to come out of his cell, and the plaintiff did not respond. (DPFF ¶ 9; PR ¶ 9.) The defendant then entered the cell and "physically directed" Mr. Kapfhammer off of the top bunk to the railing. (DPFF ¶ 10; PR ¶ 10.) During Mr. Boyd's "physical direction" of the plaintiff, the plaintiff hit the back of his left shoulder on the shelf of his cell wall. (DPFF ¶ 11; PR ¶ 11.)

Nurse Schepp of the Health Services Unit at WCI saw the plaintiff on the evening of October 2, 1996. The nurse observed "superficial abrasions to plaintiff's upper left back area below the shoulder blade," and she cleaned the area with water and iodine. (DPFF ¶ 14; PR ¶ 14.) Mr. Kapfhammer refused the offer of an x-ray and did not want to go into "sick cell." (DPFF ¶ 15; PR ¶ 15.) Captain Dittman and the acting security director deemed Mr. Boyd's actions on October 2, 1996 appropriate. (DPFF ¶ 17; PR ¶ 17.)

### Analysis

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Only disputes over facts that are outcome determinative under the applicable substantive law are considered to be material and will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 370 (7th Cir.1997).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 795 (7th Cir.1997). If the movant makes such a demonstration, the non-movant must go beyond the pleadings and set forth specific facts that show that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In resolving the motion, the court must view the record, and any reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Griffin v. City of Milwaukee,* 74 F.3d 824, 826–27 (7th Cir.1996). The court may take the plaintiff's verified complaint as an affidavit. *Ford v. Wilson,* 90 F.3d 245, 246–47 (7th Cir.1996).

Mr. Boyd sets forth two arguments. The first is that his actions, under the applicable substantive law, did not violate the plaintiff's constitutional rights. The second is that he is entitled to qualified immunity.

■ Courts engage in a standard two-pronged analysis when examining whether a state prisoner has violated a prisoner's right to be free from cruel and unusual punishment. The first question is objective: it asks whether, under the contemporary standards of decency, the deprivation was " 'harmful enough.' " *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see also Thomas v. Stalter,* 20 F.3d 298, 301 (7th Cir.1994). The second question, which is subjective, asks if the official acted with a " 'sufficiently culpable state of mind.' " *Hudson,* 503 U.S. at 8, 112 S.Ct. 995 (quoting *Wilson,* 501 U.S. at 297, 111 S.Ct. 2321); *Thomas,* 20 F.3d at 301.

■ When a prisoner's claim is one of excessive force, however, the two questions collapse into one: "[W]hether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadisti-

cally to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *see Thomas,* 20 F.3d at 301. This is because the objective standard is always met once a state official is found to have used force maliciously or sadistically. *Hudson,* 503 U.S. at 9, 112 S.Ct. 995; *Thomas,* 20 F.3d at 301.

▮▮▮ Force that is applied maliciously or sadistically to cause harm can violate a prisoner's Eighth Amendment right even when significant injury is not evident: "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson,* 503 U.S. at 9, 112 S.Ct. 995. When the use of force is "de minimis," however, the prisoner cannot recover for a violation of his constitutional rights. *Id.*

The *Hudson* court focused on striking a balance between allowing officials to maintain discipline in the prisons and keeping them from overstepping their power. *Id.* at 6, 112 S.Ct. 995 ("[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force."). In that case, prison guards punched and kicked the plaintiff. The court said the force directed at the plaintiff, "which caused bruises, swelling, loosened teeth, and a cracked dental plate," were not de minimis. *Id.* at 10, 112 S.Ct. 995. In *Thomas,* the court of appeals for the seventh circuit found that a plaintiff who had been restrained and hit in the mouth after he had resisted a court-ordered drawing of blood had made out a prima facie case of excessive force. *Thomas,* 20 F.3d at 302.

▮▮ Mr. Boyd makes the straightforward argument that he used reasonable force to accomplish the goal of the search, which was, according to his brief, "to get inmates away from an area where that inmate could dispose of contraband drugs." (Defendant's Brief in Support of Motion for Summary Judgment ["Defendant's Brief"], at 13.) His brief also states that "[t]his force was not applied in any way maliciously or sadistically to cause harm." (Defendant's Brief, at p. 13.)

A problem with Mr. Boyd's argument is that he never states what kind of force he used. Indeed, the defendant has not provided his own affidavit. Instead, he provided a copy of the incident report that he filled out on October 2, 1996. That report only says that he "directed inmate Kapfhammer off of the bunk," and his proposed finding of fact only states that he "physically directed" the plaintiff. Mr. Kapfhammer's verified complaint, however, states that the defendant "unhumanly [sic] removed" him from the top bunk and that in the process Mr. Kapfhammer hit his shoulder, causing him to bleed through his shirt. While the term "physically directed" may have a common definition among prison staff, I do not know what it means. I am therefore unable to determine whether the force that was used, and there does not appear to be a dispute that Mr. Boyd used at least some force, was de minimis.

Mr. Boyd's argument also fails because he does not adequately describe the purpose and the details of the "rapid deployment drill." Mr. Dittman's affidavit refers to the incident as a "drill," but then he describes the instructions that are "given to correctional officers conducting such a *search.*" He does not say that Mr. Boyd was given these instructions on the day of the incident. It is simply unclear whether the officers were indeed searching for drugs and other contraband on that day, or if they were training for such an event. It is also unclear, for example, how much time there was between Mr. Boyd's telling Mr. Kapfhammer to leave his cell and his "directing" him off of his bed—in other words, whether there was the possibility that Mr. Kapfhammer may have had time to hide any contraband. As I noted above, officers are certainly given discretion to maintain discipline when necessary, and drug searches are often a part of keeping order in prisons. The Supreme Court in *Hudson* ruled that excessive force claims must be looked at in the context of the incident. This court, then, would need more information about the drill itself, other than the mere statement that there was one, before it can decide whether the force was executed in the context of keeping order.

■ Mr. Boyd has provided no statement under oath, or other proof, that he applied the force in a good-faith effort to maintain discipline. While he does make that argument in his brief, there is nothing in the record to point to his intent. All the court has is his incident report that simply says that he "directed" the plaintiff off of the top bunk because he did not comply with Mr. Boyd's order. While Mr. Dittman has provided his affidavit stating that in searches like this, the officer is to "enter the cell and remove the inmate" if the inmate does not come out of his cell immediately, that is not enough. The court needs to examine Mr. Boyd's intent at the time of the incident.

■ Mr. Boyd also argues that he is entitled to qualified immunity. Government officers are immune from liability for damages if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The *Harlow* court focused the qualified immunity analysis on this objective question and declined to emphasize the defendant's subjective intent. *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727.

■ The court of appeals for the seventh circuit has aptly noted, though, that *Harlow's* objective inquiry creates a "conundrum" in situations where the plaintiff must make a showing of intent to prove that he suffered a constitutional violation. *Hill v. Shelander,* 992 F.2d 714, 717 (7th Cir.1993). The court resolved this problem by developing the following two-part test: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " *Id.* (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)). The defendant's subjective intent is only relevant to the first question. *Id.*

As described above, the standard for excessive force is subjective; I therefore must ask whether Mr. Kapfhammer has adequately "adduce[d] specific factual support for his allegation of bad intent to survive a motion for summary judgment" on the qualified im-

munity issue. In *Hill,* 992 F.2d at 717, the court of appeals found that because there was a difference between the plaintiff's description of excessive force and the defendant's description of maintaining order, the jury could find for the plaintiff on the issue of the defendant's intent:

> We cannot choose between these differing accounts of the incident on a paper record. If a finder of fact were to accept [the plaintiff's] version, it could infer that [the defendant] acted with malicious intent, meaning that [the plaintiff] could establish an eighth amendment violation. Accepting [the defendant's] version, on the other hand, the fact-finder could find that [the defendant] simply was acting in good faith to restore order in the cellblock.

*Id.* at 718. The court of appeals went on to say that it would therefore be unable to answer the immunity question without resolving a disputed issue of fact. *Id.*

■ As I found above, Mr. Boyd has not met his burden of pointing to the record to show that he was acting in good faith at the time of the October 2, 1996 incident. Therefore, there remains a disputed issue about his intent, and that disputed issue makes it impossible for the court to find that the alleged conduct does not set out a constitutional violation. Like the plaintiff in *Hill,* Mr. Kapfhammer has created enough doubt about whether there was a justification for the force that Mr. Boyd used.

The constitutional standards for excessive force were clearly established at the time in question. The " 'good-faith effort' versus 'maliciously and sadistically to cause harm' " standard for excessive force was introduced by the United States Supreme Court in *Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and was reaffirmed in *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), both of which the Court issued well before Mr. Boyd's alleged actions. *See Walker v. Shansky,* 28 F.3d 666, 670 (7th Cir.1994) (denying the qualified immunity defense on an Eighth Amendment claim for medical mistreatment because the standard had "been in place, relatively unchanged").

**694**

In conclusion, I find that there is a genuine issue of material fact regarding whether Mr. Boyd indeed used the force to maintain discipline or if he used it to cause harm. There is also a question about what kind of force the defendant actually used. Based on the limited record before me, I cannot determine whether Mr. Boyd used the force in good faith and whether he is entitled to qualified immunity.

Therefore, IT IS ORDERED that the defendant's motion for summary judgment be and hereby is denied.

The defendant's attorney is directed to ensure that the plaintiff has access to a telephone for the telephonic pretrial conference scheduled for Thursday, June 4, 1998, at 9:30 a.m. Also, the defendant's attorney is requested to notify the court of the telephone numbers at which both he and the plaintiff can be reached at that time.