**Nicholas C. OMDAHL, Roger C. Omdahl, and Linda Omdahl, Plaintiffs–Appellees,**

**v.**

**David E. LINDHOLM and Michael G. Stoffel, Defendants–Appellants.**

No. 97–3845.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1998.

Decided March 15, 1999.

Gregory J. Schmidt (argued), St. Paul, MN, for Plaintiffs–Appellees.

Thomas J. Misfeldt (argued), Misfeldt, Stark, Richie, Wickstrom & Wachs, Eau Claire, WI, for Defendants–Appellants.

Before RIPPLE, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

During the day of September 8, 1995, Nicholas Omdahl's friends contacted the Polk County (Wisconsin) Sheriff's Department voicing their concern for his safety. They told the sheriff's department that fifteen-year-old Nicholas had gone to the Gandy Dancer Trail in Polk County armed with a rifle and that he intended to kill himself. The sheriff's department had also been alerted to the fact that Nicholas previously had been in an armed stand-off with Minnesota law enforcement officials and that earlier in the day he had pointed a rifle at friends.

The sheriff's department sent a response team to the scene, including Sergeant David Lindholm and Deputy Michael Stoffel. By the time Nicholas became aware of the officers, who he believed numbered between two and five, darkness was descending. He stood in the middle of a bridge, holding a rifle loaded with three to five rounds of live ammunition. The officers remained in a wooded area near him.

In an effort to resolve the situation, Lindholm began talking with Nicholas. They spoke for twenty-five to forty-five minutes. During this time, Lindholm made several suggestions to the boy, urging him to put down the rifle and come off the bridge. Each recommendation ended with Nicholas's refusal to acquiesce. Nicholas repeated that he did not want to harm the officers, but rather he wanted to end his own life. Trying to get Nicholas to understand the gravity of the situation, Lindholm asked the boy if he knew how it would end. Nicholas responded that it could end with him in jail, in the hospital, or dead and that he preferred neither of the first two options.

As the evening wore on, the temperature dropped, and Nicholas became cold. He asked Lindholm for a police jacket. Sensing a possible solution, Lindholm readily agreed to provide him with one, but on one condition—Nicholas would have to drop the rifle so that Lindholm could bring the jacket to him on the bridge. Nicholas refused. Lindholm modified the plan, offering to throw the jacket onto the trail if Nicholas left the bridge without his rifle. Again, Nicholas refused; he did not want to leave the bridge without his rifle. After further negotiations, they agreed on a plan. Lindholm would throw the jacket onto the trail and leave the area. Nicholas, then, would leave the bridge holding his rifle over his head and retrieve the jacket. Lindholm put the jacket on the trail and left; Nicholas moved off the bridge with his rifle, heading for the trail to pick up the jacket.

Because it was dark, Nicholas had trouble seeing the jacket. Lindholm offered to light the area to help. Nicholas and his parents ("the Omdahls") claim that Lindholm could see Nicholas walking toward the jacket with the rifle above his head in a "posture of surrender." As Nicholas walked toward the jacket, the light illuminated the area where Nicholas was searching. Instead of pointing the gun toward the officers, the Omdahls claim that Nicholas pointed the rifle behind him toward the ground. As Nicholas turned toward the light, he felt something hit him between his chest and his knees. He stepped back. Again, he felt something hit

him.[1] After being hit, Nicholas stumbled backward. The objects that hit him were bean bag rounds fired from Stoffel's twelve-gauge shotgun. Lindholm had ordered the use of the bean bag rounds out of concern for the six officers in the vicinity of the bridge and the neighboring homes that Nicholas could reach if he left the bridge and evaded attempts to restrain him. According to the Omdahls' version of the events, Nicholas never fired at the officers.

A few seconds later, Nicholas felt something hit his face. Instead of being another bean bag round, it was a bullet from a Ruger Mini 14, fired by Lindholm. Nicholas fell to the ground and dropped his rifle. The Omdahls contend that Lindholm ordered Stoffel to fire the bean bag rounds and fired his handgun while Nicholas was in a less aggressive position.[2] The stand-off ended. He survived the wound, but had to undergo extensive reconstruction surgeries and therapy.

As a result of these events, Nicholas and his parents, Roger and Linda Omdahl, brought a claim under 42 U.S.C. § 1983 against Polk County, the Polk County Sheriff's Department, Lindholm, and Stoffel, alleging that they violated Nicholas's Fourth Amendment rights by using excessive force against him. They also asserted state law negligence claims against all four defendants and assault and battery claims against Lindholm and Stoffel.

Lindholm and Stoffel, along with Polk County and the Polk County Sheriff's Department, moved for summary judgment. The district court dismissed Polk County and the Polk County Sheriff's Department because the Omdahls failed to allege sufficient facts to establish a valid section 1983 claim. It also granted summary judgment on the Omdahls' state law negligence claims with regard to these defendants under immunity doctrine. Lindholm and Stoffel, specifically, claimed that they were entitled to a ruling in their favor because their use of force was reasonable or, alternatively, they were entitled to qualified immunity. The district court, however, denied summary judgment[3] to Lindholm and Stoffel, finding that material facts remained in dispute. Lindholm and Stoffel present an interlocutory appeal with regard to the portion of the district court's ruling dealing with the denial of the qualified immunity defense.

■■■■ As an appellate court, we have jurisdiction only to hear appeals from "final decisions" of district courts. See 28 U.S.C. § 1291. However, we may review interlocutory appeals—appeals from district court decisions that come to appellate courts before the end of the district court proceedings—in some instances. See Johnson v. Jones, 515 U.S. 304, 309–10, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In the case of interlocutory appeals involving denials of qualified immunity, our jurisdiction is limited to cases involving questions of law. See Mitchell v. Forsyth, 472 U.S. 511, 526–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). If questions of fact remain unresolved, we lack jurisdiction over the appeal. See Clash v. Beatty, 77 F.3d 1045, 1046 (7th Cir.1996); Estate of Starks v. Enyart, 5 F.3d 230, 232–33 (7th Cir.1993); Hill v. Shelander, 992 F.2d 714, 716 (7th Cir.1993). A "defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order in-

---

1. Both sides also agree that Nicholas may have been hit a third time as well.

2. Lindholm and Stoffel challenged these facts in the district court and in their briefs. They asserted that Lindholm observed Nicholas with his hand near the trigger of the rifle, which the boy held at his waist pointed toward the officers. Stoffel also contended that he saw Nicholas fire one round from the rifle before Lindholm fired his weapon. However, at oral argument, Lindholm and Stoffel stated that for the sake of this appeal, they would accept the Omdahls' version of the facts with regard to Nicholas's actions as he was leaving the bridge.

3. In evaluating the motion for summary judgment with regard to the reasonableness of Lindholm's and Stoffel's actions, the district court concluded that "[w]ithout a more thorough development of the facts of what occurred on the bridge, I cannot say that the officers' actions were reasonable." The district court also stated that Lindholm and Stoffel were not entitled to invoke the qualified immunity defense "[i]f it is found that defendants used deadly force under circumstances that were objectively unreasonable." Again, the district court stressed that genuine issues of fact existed that made it inappropriate to grant Lindholm and Stoffel's motion for summary judgment.

sofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319–20, 115 S.Ct. 2151. Thus, we may review Lindholm and Stoffel's claim only if no genuine issues of fact remain.

■ Before this court, one issue of fact exists that has bearing upon two issues the parties ask us to resolve. Both parties continue to disagree as to whether the use of bean bag projectiles constituted deadly force or merely a higher level of force along a ladder of escalating force.[4] The issue of whether Lindholm and Stoffel used deadly force is central to the determination of whether the district court should have granted their motion for summary judgment. The dispute goes to the question of whether Lindholm's and Stoffel's actions were reasonable in light of pre-existing law and to whether they are entitled to qualified immunity. It is also the key dispute as to whether the Omdahls established the existence of an alleged constitutional violation and, thus, whether they can successfully refute the qualified immunity defense.

■ Whether the use of the bean bag rounds constituted the use of deadly force is material to resolving whether or not Lindholm and Stoffel are entitled to the defense of qualified immunity. This defense shields officers if "a reasonable officer could have believed [the action taken was] lawful, in light of clearly established law and the information the officers possessed." *Starks*, 5 F.3d at 233 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Hill*, 992 F.2d at 716–17. As with the underlying claim to which Lindholm and Stoffel raise this defense, we must consider whether the officers' actions are objectively reasonable in light of pre-existing law. *See Starks*, 5 F.3d at 233. Thus, determining whether Lindholm's and Stoffel's actions were objectively reasonable requires us to resolve the factual dispute regarding the classification of the bean bag rounds as deadly force. Making such a determination is improper because it requires us to step beyond the jurisdictional limitations of this Court by resolving a material issue of fact.

■ This dispute about the nature of bean bag rounds is also material to the Omdahls' ability to challenge the qualified immunity defense. The qualified immunity defense places the burden of establishing the existence of the alleged constitutional violation on the Omdahls. *See Clash*, 77 F.3d at 1047. At the crux of this matter is whether Lindholm and Stoffel used excessive force so as to violate Nicholas's Fourth Amendment right protecting him against unreasonable seizures. Under the Fourth Amendment, courts ascertain whether the use of force is unconstitutional based on a reasonableness standard. *See Lester v. Chicago*, 830 F.2d 706, 709 (7th Cir.1987). Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion" to determine "whether the totality of the circumstances justifies a particular sort of ... seizure." *Id.* at 711 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). As the Supreme Court has noted, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Garner*, 471 U.S. at 7, 105 S.Ct. 1694. The Omdahls ground their claim in the assertion that Lindholm and Stoffel's use of deadly force when Stoffel fired the bean bag rounds was unreasonable under the Fourth Amendment. Thus, whether the Omdahls can establish the existence of a constitutional violation turns on how a fact-finder resolves the question of fact regarding deadly force. The existence of a factual dispute prevents us from resolving this issue.

4. While the district court noted that the parties disagreed about the bean bag rounds, it concluded that these rounds can cause death or serious injury for purposes of its opinion.

Lindholm and Stoffel ask this Court to reverse the district court's denial of their motion for summary judgment with regard to their defense of qualified immunity. Reaching such a conclusion would require us to decide a material issue of fact—whether bean bag rounds constitute deadly force. We do not have the jurisdictional authority to make such a decision. It is for the trial court to resolve issues of fact, not an appellate court.[5] Simply stated, we do not have jurisdiction to consider the merits of this interlocutory appeal. Therefore, we DISMISS Lindholm and Stoffel's appeal.

---

5. The factual dispute of Nicholas's actions involving his rifle as he was leaving the bridge in search of the jacket also remains unresolved on return of this matter to the district court.