Roy D. WIGGINS and Andrea P. Wiggins, Plaintiffs–Appellants,

v.

Donald E. GULLEY, Defendant–Appellee.

No. 03–1842.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 2004.

Decided April 7, 2004.

C. David Nelson, Harrisburg, IL, for Plaintiffs–Appellants.

Laura Wunder, Office of the Attorney General, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

In early 2002, Roy Wiggins and his daughter, Andrea Wiggins, initiated this action under 42 U.S.C. § 1983 against Donald Gulley, an Illinois State Police ("ISP") Officer.[1] Their first amended complaint alleged that Officer Gulley had violated their rights under the Fourth and Fourteenth Amendments by ticketing them under 625 ILCS 5/12–503 after that statutory provision had been ruled unconstitutional as applied to them. The complaint requested damages and injunctive relief. On November 12, 2002, Officer Gulley moved for summary judgment. On February 26, 2003, the United States District Court for the Southern District of Illinois granted Officer Gulley's motion and entered judgment in his favor. The Wiggins timely appealed. For the reasons set forth in this order, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. Facts

Roy Wiggins has been diagnosed since 1989 as suffering from acute light sensitivity. Mr. Wiggins and his wife own two vehicles: a 1999 Ford Mustang and a 1994 Honda Accord. Both of these vehicles have tinted windows. Andrea Wiggins, Roy's daughter, is a college student who lives at home with her parents. She sometimes drives these vehicles.

Section 12–503(a) of the Illinois Vehicle Code, 625 ILCS 5/12–503(a), prohibits any person from driving "a motor vehicle with any ... tinted film upon the front windshield ... or side windows immediately adjacent to each side of the driver." This prohibition became effective on January 1, 1998. There is a medical exception to this prohibition located in § 12–503(g); this exception phases out on January 1, 2008. Section 12–503(g) excludes motor vehicles when the tint was applied "before the effective date of this amendatory Act of 1997 [January 1, 1998]," and either (1) the vehicle is owned by someone suffering from a condition which requires that their eyes be "shielded from the direct rays of sun," or (2) the vehicle is used in transporting someone who "resides at the same address" as a person with the condition. 625 ILCS 5/12–503(g)(1)–(2). The tint on both of the Wiggins' vehicles was applied after January 1, 1998. *See* R. Wiggins Dep. at 11.

---

1. This case was originally filed in Illinois state court. Officer Gulley then removed the case to the United States District Court for the Southern District of Illinois.

Beginning in February of 2001 and ending in January of 2002, nine citations were issued to Roy and Andrea Wiggins under § 12–503 as a result of the tint. These tickets were issued by Officer Gulley and two other ISP officers, Nathan Douglas and Richard White. All tickets were adjudicated in the Circuit Court for the First Judicial Circuit, Saline County, Illinois.[2] No appeal was ever taken from any of the circuit court's dispositions.

The first ticket (# 01 TR 542) was issued on February 17, 2001, by Officer Gulley to Andrea while she was driving the 1999 Ford. Andrea pleaded guilty to violating § 12–503. The next ticket (# 01 TR 806) was issued on March 10, 2001, by Officer Gulley to Andrea while she was driving the 1999 Ford. A trial was held, and the circuit court found Andrea guilty of violating § 12–503(a) and not exempt under § 12–503(g). On March 20, 2001, Officer Gulley issued a ticket (# 01 TR 879) to Roy while he was driving the 1999 Ford. Assistant State's Attorney Lowell Tison, Jr., filed a motion to dismiss the ticket, specifying no reason. The court granted the motion without explanation. On April 4, 2001, Officer Douglas issued Roy a ticket (# 01 TR 1028) while he was driving the 1999 Ford. Tison again filed a motion to dismiss, again specifying no reason; the court again granted the motion, again without explanation.

On May 23, 2001, Andrea received a ticket (# 01 TR 1500) from Officer Gulley while driving the 1999 Ford. On August 10, 2001, Andrea's counsel filed a motion to dismiss this ticket. The motion argued that § 12–503 was "unconstitutional as applied to vehicles registered to Illinois residents with a medical need to protect their eyes from the sun after January 1, 1998, under the equal protection clause of the Illinois and federal constitutions." R.33, Ex.E ¶ 6. On August 20, 2001, the circuit court held a hearing on the motion. Officer Gulley did not attend the hearing due to another assignment. Saline County State's Attorney Rod Wolf appeared for the State and told the court: "It's [sic] not a lot at stake here. With respect to this case, I'm not going to object to it on a Motion to Dismiss on a tinted window." R.33, Ex.O at 2. Judge Lockwood responded: "Okay. Then the motion will be granted." *Id.* The record contains a sheet which merely notes: "8/20/01 Trooper did not appear—Motion is not resisted—Motion to Dismiss is granted." R.33, Ex.E.

On August 6, 2001, Andrea received a ticket (# 01 TR 2420) from Officer Gulley while driving the 1999 Ford. Andrea's counsel filed a motion to dismiss, again alleging that § 12–503, as applied to the Wiggins, violated equal protection. On September 28, 2001, the circuit court issued a written opinion declaring § 12–503 unconstitutional "as applied to vehicles registered to Illinois residents with a medical need to protect their eyes from the sun after January 1, 1998." R.33, Ex.H ¶ 5. The court explained: "[T]here is no [sic] absolutely no rational basis ... for treating citizens such as Mr. Wiggins dissimilarly from others similarly situated whose window tints antedate January 1, 1998." *Id.* ¶ 6.

On August 23, 2001, Officer Gulley issued a ticket (# 01 TR 2621) to Roy while he was driving the 1994 Honda. Roy's counsel filed a motion to dismiss on August 31, 2001. The motion claimed: "Under 625 ILCS 5/12–503(g)(1), the prohibition against tinted side windows does not apply to this 1994 Honda automobile...." R.33, Ex.I ¶ 4. The record sheet for this ticket

---

2. Although it is not entirely clear from the record, the parties appear to agree that Judge Brocton Lockwood presided over the disposition of all of the tickets.

states: "9/26/01 Vacate Judgment—Motion to Dismiss filed—Motion to Dismiss is granted." R.33, Ex.I.

On September 17, 2001, Andrea, while driving the 1999 Ford, received a ticket (# 01 TR 2868) from Officer Gulley. On October 1, 2001, Andrea's counsel filed a motion to dismiss again challenging § 12–503's constitutionality as applied to the Wiggins. Then, on October 11, 2001, her counsel filed a "SUPPLEMENTAL MOTION TO DISMISS." R.33, Ex.J. This motion argued: "On September 28, 2001, in Case No.2001–TR–2420, this Court entered its order deciding this identical issue, and ruled that the statute in question is unconstitutional as applied.... This prosecution-and any further prosecution of this defendant for this charge based on driving this vehicle-are barred by collateral estoppel." *Id.* ¶¶ 1–2. The record sheet for this ticket notes: "Dismissed." R.33, Ex.J.

The last ticket (# 02 TR 147) was issued on January 10, 2002, by Officer White to Roy while he was driving the 1994 Honda. On this day, White was a probationary officer riding with Officer Douglas, his supervising officer, on field training. Officer Douglas saw Officer Gulley's car parked, and Douglas and White pulled over so that White could meet Gulley. Officer White testified that, as they were talking, "one of them said, 'Do you want to get a ticket for window tint. There goes a car with tinted windows.'" White Dep. at 14–15. The car turned out to be Roy's 1994 Honda. Officer White approached the car, which was parked in a handicap space, and Roy gave him the medical excuse for the tinted windows. Officer White returned to the squad car to write Roy a ticket for parking in the handicap space; however, he was unsure if the medical excuse constituted a valid exemption from § 12–503(a). *Id.* at 16–17. His first instinct was to "let him slide" on the tinted windows violation because he had an excuse. *Id.* at 17, 24.

At some point after Officer White got back in the car, Officer Gulley pulled up on the passenger side, where Officer Douglas was sitting. Officer White testified that he overheard Gulley tell Douglas that "[y]ou guys should write him a ticket ... because that is not valid." *Id.* at 25. Officers White and Douglas pulled § 12–503 up on a computer in the squad car, and they read it together. Officer White explained that he concluded Roy should be ticketed under § 12–503 "with a combination of reading that and with my training officer [Douglas] telling me the way he looked at it that it was not—it was not a valid excuse." *Id.* at 26.

Officer Douglas described the January 10, 2002 stop in a similar manner. He testified that he heard Gulley tell White that the medical excuse was not valid, "which I [Douglas] reiterated was correct." Douglas Dep. at 25–26. However, he also testified that neither he nor Gulley directed White to write Roy a tinted windows ticket, *id.* at 33, and that the ultimate decision was White's alone, *id.* at 25, 27, 33. Officer Gulley testified that he pulled up for "a matter of seconds and left." Gulley Dep. at 93. He elaborated that, after he drove up beside Officer Douglas, "they told me that he had an excuse. And I said, Well [sic], it's not valid, and I drove off. That's—it was Trooper White's ticket. Trooper Douglas was the [Field Training Officer]. He was doing the instructing so I didn't want to interfere with his teaching." [3] *Id.* at 92. Finally, Roy testified that, while he was stopped, Officer Gulley circled them "like a buzzard," but Roy also

---

**3.** Officer Gulley did not have any supervisory responsibilities over then-Probationary Officer White on January 10, 2002. *See* Gulley Dep. at 92.

explained that he had no knowledge of the conversation between the officers. R. Wiggins Dep. at 44. On January 16, 2002, Roy's counsel filed a motion to dismiss the January 10 ticket. This motion argued that the prohibition against tinted windows was inapplicable to the 1994 Honda under the medical exception in § 12–503(g). The record sheet for this ticket states: "Dismissed." R.33, Ex.K.

## B. District Court Proceedings

In a memorandum and order dated February 26, 2003, the district court granted Officer Gulley's motion for summary judgment. R.41. Beginning with the Wiggins' Fourth Amendment claim, the court explained that "[t]he plaintiffs argue ... that probable cause no longer existed once the Saline County Circuit Court ruled that the statute was unconstitutional as applied to Roy Wiggins's vehicles." *Id.* at 5–6. The court concluded this argument was "misguided." *Id.* at 6. The court explained that a Fourth Amendment claim for an unreasonable seizure will lie against an arresting officer who arrests a suspect pursuant to a constitutionally infirm statute only if the officer could not have reasonably relied on the constitutionality of the statute, "and such an action is based upon the specific constitutional infirmity of the statute—not necessarily upon the Fourth Amendment's prohibition of 'unreasonable seizures.'" *Id.* Thus, the court held, the Wiggins' challenge was analyzed properly under equal protection doctrine.

The district court then inquired into the Wiggins' equal protection claim under the two-part qualified immunity test of *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court explained that, under *Saucier*, "[f]irst a court must consider whether the undisputed facts, viewed in the light most favorable to the party asserting injury, indicate that the officer's conduct violated a constitutional right. [*Saucier*, 533 U.S. at 201]. Only once a court has found, under the appropriate standard, the existence of a constitutional violation, must a court consider whether the undisputed facts indicate that the right violated was clearly established. [*Id.*]." *Id.* at 7–8. The court considered two possible theories through which the Wiggins' equal protection rights were violated by Officer Gulley: "(1) that Gulley's conduct (enforcing § 12–503) was not rationally related to any legitimate state interest, and (2) that Gulley singled out the plaintiffs for differential treatment solely because of his personal animus for the plaintiffs [the so-called "class of one" challenge]." *Id.* at 7.

Beginning with the first, the district court held that, "[b]ecause there is no dispute that the plaintiffs actually violated § 12–503, the question is really whether the statute violates the Equal Protection Clause." *Id.* at 8. The court concluded it did not.[4] The court noted that, because the Wiggins were not members of a suspect or quasi-suspect class, § 12–503 was appropriately considered under a rational basis standard. Section 12–503 passed this standard, the court held, because it advanced the legitimate purpose of protecting police officers, and the "legislature could have reasonably determined that this incremental approach would be less burdensome on Illinois automobile owners than an outright ban on all tinted windows." *Id.* at 9. Finally, the court concluded that, even assuming § 12–503 did vio-

---

4. The district court considered the Saline County Circuit Court's determination that § 12–503 violated equal protection irrelevant. It reasoned that the Wiggins could not use

"the doctrine of collateral estoppel offensively against Gulley" because he did not have a full and fair opportunity to litigate the issue in the criminal proceedings. R.41 at 8 n. 3.

late equal protection principles, and thus the Wiggins' equal protection rights were violated by Officer Gulley, "[a]ny constitutional right violated was not clearly established at the relevant time." [5] *Id.* at 9.

Turning to the Wiggins' "class of one" equal protection claim, the district court noted that the Wiggins failed to offer any evidence that they were treated differently from similarly situated people. *Id.* at 12. Specifically, "[t]he plaintiffs have not directed the Court's attention to any evidence that Gulley or his alleged cohorts failed to stop other cars with tinted windows." *Id.* Therefore, the court held, the Wiggins' "class of one" challenge also had to be dismissed for failure of proof.

## II

## DISCUSSION

We review a district court's grant of grant summary judgment de novo. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir.2003). In conducting this inquiry, we are obliged to construe all facts, and draw all reasonable inferences from those facts, in favor of the non-moving party, in this case, the Wiggins. *See id.* Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir.2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter

of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). In order to present a *genuine* issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The parties agree that, because Officer Gulley has claimed qualified immunity, our inquiry is governed by *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the "threshold question" is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. The Wiggins have argued to this court that the district court misconstrued their legal theory. They claim that, when a court of jurisdiction holds a statute unconstitutional as applied to a certain citizen, an officer's subsequent traffic stop and ticketing of that citizen under that constitutionally infirm statute violates the citizen's rights under the Fourth and Fourteenth Amendments. Even assuming this is true, which we shall do for purposes of this appeal, we hold that the Wiggins have failed to present sufficient evidence

---

**5.** The district court noted that the Saline County Circuit Court's decision on § 12–503's constitutionality was also irrelevant to this inquiry because "[t]rial courts do not make 'clearly established law.'" R.41 at 10 (citing *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir.1995)).

to create an issue of triable fact as to whether Officer Gulley caused a violation of their federal rights. *See id.; see also Brokaw v. Mercer County,* 235 F.3d 1000, 1012 (7th Cir.2000) (explaining that to "establish personal liability in a § 1983 action, the plaintiff must show that the government officer caused the deprivation of a federal right" (quotations marks and citation omitted)). Specifically, the Wiggins have failed to present sufficient evidence from which a reasonable trier of fact could conclude that Officer Gulley issued, or caused to be issued, a ticket to them under § 12–503 after the Saline County Circuit Court ruled that § 12–503 was unconstitutional as applied to them. For this reason, the district court's grant of summary judgment must be affirmed, albeit on different grounds.[6]

The first question we must determine is when the clock started for purposes of the Wiggins' legal theory, which requires us to determine the time at which the circuit court held § 12–503 unconstitutional as applied to the Wiggins. The circuit court issued its only written opinion declaring § 12–503 unconstitutional as applied on September 28, 2001, in response to the motion to dismiss Andrea's August 6, 2001 ticket (# 01 TR 2420). R.33, Ex.H. However, the Wiggins argue that the circuit court actually held § 12–503 unconstitutional as applied on August 20, 2001. This is the date on which the circuit court held a hearing on Andrea's motion to dismiss the May 23, 2001 ticket (# 01 TR 1500), which argued § 12–503 was unconstitution-

al as applied to the Wiggins. As noted above, State's Attorney Wolf, who appeared at that hearing, told the court that there is "not a lot at stake here. With respect to this case, I'm not going to object to it on a Motion to Dismiss on a tinted window"; Judge Lockwood responded: "Okay. Then the motion will be granted." R.33, Ex.O at 2. The record contains a sheet which merely notes: "8/20/01 Trooper did not appear. Motion is not resisted. Motion to Dismiss is granted." R.33, Ex.E.

Based on this evidence, we cannot conclude that the circuit court held § 12–503 unconstitutional as applied on August 20, 2001. The most plausible reading is that the court was dismissing the May 23 ticket because Officer Gulley did not appear and the motion was not resisted. This reading is reinforced by the fact that the court issued a separate opinion on September 28, 2001, declaring § 12–503 unconstitutional as applied, and this opinion does not in any way reference the August 20 disposition. It is also telling that Andrea's counsel, in an October 11, 2001 "SUPPLEMENTAL MOTION TO DISMISS," argued that collateral estoppel principles precluded any enforcement of § 12–503 against the Wiggins because "[o]n September 28, 2001, in Case No.2001–TR–2420, this Court entered its order deciding this identical issue, and ruled that the statute in question is unconstitutional as applied." R.33, Ex.J ¶ 1. Finally, we note that any theory which would hold an officer liable for enforcing a

**6.** " 'We may affirm a summary judgment on any ground that finds support in the record' where the ground has been 'adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue.' " *Lawshe v. Simpson,* 16 F.3d 1475, 1483 (7th Cir.1994) (quoting *Box v. A & P Tea Co.,* 772 F.2d 1372, 1376 (7th Cir.1985)). In this case, Officer Gulley argued in his

summary judgment motion that summary judgment was appropriate because "[o]nly a single ticket, not written by Defendant, was issued after the September 28, 2001 finding of unconstitutionality." R.32 at 3 ¶ 9(b). The Wiggins responded to this argument in their memorandum in opposition to summary judgment, citing various portions of the record. R.34 at 4–6.

constitutionally infirm statute would have to include the condition that the officer be put on some sort of notice of the statute's unconstitutionality. *See Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), *overruled on other grounds as stated in Hill v. Shelander,* 992 F.2d 714, 716–17 (7th Cir.1993); *Foster v. Zeeko,* 540 F.2d 1310, 1313 (7th Cir.1976). The circuit court's terse statements in its August 20 disposition cannot reasonably be said to put Officer Gulley on any form of notice that the statute was held unconstitutional as applied to the Wiggins. For these reasons, we must reject the Wiggins' contention and hold that the clock started on September 28, 2001, when the circuit court issued its opinion declaring § 12–503 unconstitutional as applied.

After the clock started on September 28, 2001, only one more ticket was issued to the Wiggins: the January 10, 2002 ticket (# 02 TR 147) issued by Officer White, then a probationary officer, to Roy. The Wiggins argue that this ticket is attributable to Officer Gulley because he "caused" Officer White to issue it. *See Brokaw,* 235 F.3d at 1012 ("An official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights."). However, after a careful review of the record, we must conclude that the evidence is insufficient for a reasonable trier of fact to conclude that Officer Gulley "caused" this ticket to be issued to Roy.

As noted in our rendition of the facts, the deposition testimony of all three officers reveals that Officer White heard Officer Gulley state that Roy's medical exception was not valid and that a ticket under § 12–503 was warranted. *See* White Dep. at 25–26; Douglas Dep. at 25–26; Gulley Dep. at 92–93. However, their testimony also reveals that the decision to issue the ticket under § 12–503 was either Officer White's alone, or, at most, Officer White's and Officer Douglas'. *See* White Dep. at 26 ("I concluded by—with a combination of reading that and with my training officer [Douglas] telling me the way he looked at it that it was not—it was not a valid excuse."); Douglas Dep. at 25, 27, 33; Gulley Dep. at 92–93. Furthermore, Mr. Wiggins' testimony does not undercut this conclusion. He notes that Officer Gulley's car circled them "like a buzzard," but he also concedes he has no knowledge of the conversation between the officers. R. Wiggins Dep. at 44. Neither this testimony, nor any other evidence we have located in the record, is sufficient for a reasonable trier of fact to conclude Officer Gulley "caused" Officer White to issue the January 10, 2002 ticket. *See Matsushita Elec. Indus.,* 475 U.S. at 587. Because this was the only ticket issued after the September 28, 2001 opinion, the Wiggins, under their own legal theory, have failed to produce evidence which creates a genuine issue of fact under the threshold inquiry of *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### Conclusion

For the foregoing reasons, we must affirm the judgment of the district court.

AFFIRMED